IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:20cr256 |
| | ) | |
| MOHAMMED TARIQ AMIN, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: April 16, 2021 |

## United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Mohammed Tariq Amin ("Amin"). The Pre-Sentence Investigation Report ("PSR") has calculated the Guidelines range at 46-57 months. As discussed in further detail in this memorandum, the Government intends to be bound by the intention of the parties in negotiating the Plea Agreement[1], and recommends that the appropriate guidelines range here is 37-46 months with respect to incarceration.[2] The Government also notes that this Court has already sentenced two of Amin's co-conspirators and has elected to

---

[1] The Probation Office has calculated Amin's Offense Level at 23 and has included a +2 enhancement based on loss to a federal health care program in this calculation. It was the intention of the parties when negotiating the plea that the Government would not recommend this +2 enhancement and the Government intends to be bound by the parties' intentions here. As such, the Government recommends that Amin's Offense Level be calculated at 21. It is the Government's view that the appropriate offense level is 21 with regard to both Count 1 and Count 2.

[2] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

sentence below the guidelines range[3]. Based on the advisory Guidelines range, the § 3553(a) factors, and the Court's prior sentences regarding co-conspirators, a sentence of incarceration of 32 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

In particular, a sentence of 32 months appropriately captures the seriousness of Amin's decisions to engage in multiple schemes to defraud health care benefit programs for almost four years resulting in a loss that is approximately $1 million for Count 1 and exceeds $6 million for Count 2. Moreover, a sentence of 32 months is necessary to provide general deterrence of fraud schemes, like this one, which are often hard to detect and can cause considerable losses to health care benefit programs, as well as beneficiaries. On the other hand, this recommendation takes into account that Amin did not significantly profit from his involvement in the conspiracy and was not one of the leaders of this massive scheme that spanned a significant period of time and resulted in considerable loss, nor was he a licensed pharmacist at the time of the events in question. Accordingly, the United States requests that this Court impose a sentence of imprisonment of 32 months and a period of supervised release of three years.

I. **Factual Background**[4]

From at least in or around January 2015 through at least in or around November 2018, Amin engaged in a scheme with Mohamed Abdalla ("Abdalla"), Onkur Lal ("Lal"), and others to

---

[3] On March 5, 2021, the Court assessed the Guidelines range for defendant Onkur Lal between 57 and 71 months, and sentenced Lal to a term of incarceration of 36 months. *See United States v. Lal*, 1:20-cr-237, Docket No. 20. On March 19, 2021, the Court assessed the Guidelines range for defendant Mohamed Abdalla between 70 and 87 months, and sentenced Abdalla to a term of incarceration of 48 months. *See United States v. Abdalla* 1:20-cr-250, Docket No. 17.

[4] The PSR and the Statement of Facts signed by the defendant (Doc. No. 8) adequately set forth the offense conduct in this case.

defraud health care benefit programs. Abdalla owed and/or operated multiple pharmacies located in the Eastern District of Virginia during the time of the conspiracy including Medex Health Pharmacy ("Medex Health") and Royal Care Pharmacy ("Royal Care"). Amin began working for Abdalla as a pharmacy technician. From on or around January 2016 to on or around November 7, 2018, Amin was the general manager of Royal Care. During the time period of the conspiracy, Amin acquired a 1.5% ownership interest in Royal Care.

### Conspiracy To Commit Health Care Fraud

During the course of the conspiracy, Amin and his co-conspirators, including Abdalla and Lal, would generate false prescriptions using their names, the names of other pharmacy employees, or the names of friends and family members. Amin often elevated his credentials in RX30, the pharmacy's prescription software system, to facilitate this scheme and other schemes. Amin knew about a prescription for an opioid antidote that was billed for his wife, which was never prescribed and which his wife never received. While the pharmacy benefitted significantly from the fraudulent prescriptions that were billed, one additional benefit of this scheme to the co-conspirators was that it would allow them to exhaust their health care program deductibles, even though they were not actually paying the required co-payments or out-of-pocket expenses. Health care benefit programs paid the pharmacy approximately $227,757.04 for these fraudulent prescriptions during the time period that Amin was involved in the conspiracy.

Furthermore, Amin and his co-conspirators would bill health care benefit programs for prescriptions for existing pharmacy customers when these prescriptions were never filled. The co-conspirators selected extremely expensive medications when engaging in this scheme to maximize payments received from the health care benefit programs. On occasion, the co-conspirators would even send these unnecessary drugs to patients and would receive complaints from these customers

upon receipt of these medications. The co-conspirators were paid approximately $4,728,037.46 for this scheme while Amin was involved in the conspiracy. Because of how rampant and lucrative the fraud was, it is unsurprising that at times during the conspiracy, Royal Care was audited by pharmacy benefit managers ("PBM").[5] When this occurred, the co-conspirators would take significant actions to try to conceal their fraud including fabricating false invoices and fraudulent copies of prescriptions to mask drug shortages/discrepancies. In fact, Amin submitted a letter to a PBM under a false name in which Amin attempted to hide that there was a drug inventory discrepancy at the pharmacy.

Amin, Abdalla, and a medical sales specialist from a pharmaceutical company, Dan Walker, also engaged in a scheme where Abdalla and Amin paid Walker kickbacks for prescriptions received for an expensive naloxone auto-injector device used to treat opioid emergencies. Specifically, Abdalla and Amin entered into an agreement to pay Walker 25% of all net sales for the prescriptions. Abdalla and Amin billed private health insurance companies for these prescriptions that were tainted by the kickbacks, and these private health insurance companies paid millions of dollars for these prescriptions.

Finally, the co-conspirators billed a health benefit program for claims submitted on behalf of members of the health plan for a foreign embassy when these medications were never prescribed by a licensed physician. This health benefit program paid approximately $35,935.38 for prescriptions involved in this illegal conduct. In total, during the time Amin was involved in the conspiracy, all of the schemes described above resulted in a loss to federal, state, and private health care benefit programs in the amount of approximately $6,050,470.16.

---

[5] PBMs are third party administrators of prescription drug plans for federal, state, and private health care benefit programs. Among other things, PBMs process and pay drug claims on behalf of the plans.

**Conspiracy To Offer and Pay Health Care Kickbacks**

In addition to the kickback scheme described above where the co-conspirators billed private health care benefit programs for a naloxone auto-injector device that was tainted by kickbacks, Amin and his co-conspirators also billed federal health care benefit programs for this device in violation of the Anti-Kickback Statute. Amin withdrew approximately $70,823.78 from a bank account that he controlled and used at least some of it to pay kickbacks to Walker. These federal health care programs paid over $8 million for these prescriptions tainted by the kickbacks.

After Amin was approached by the Government, he agreed to speak with law enforcement and admitted to his participation in the fraud scheme and admitted his culpability. On November 10, 2020, Amin pled guilty to one count of conspiracy to offer and pay health care kickbacks, in violation of 18 U.S.C. § 371 and one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

**II.     Guidelines Calculation**

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the Probation Office has grouped the two offenses together and has used Count 2 to calculate the offense level, since the Probation Office has determined that it results in the higher level. The Probation Office has calculated Amin's total offense level at 23. This includes a base offense level of 6, an 18-level enhancement based on a total loss of more than $3,500,000 but $9,500,000 or less, and a 2-level enhancement based on a conviction of a health care offense involving more than a $1,000,000 loss to a federal health care program. It also includes a 3-level reduction for the defendant's acceptance of responsibility and

timely notification to the United States of his intention to plead guilty. The guidelines range for this total offense level is 46-57 months.

In negotiating the plea agreement, it was the intention of the parties that the Government would not recommend an additional +2 enhancement based on a loss to a federal health care program of more than $1,000,000. The Government intends to be bound by the intent of the parties during the plea negotiations. As such, the Government recommends a base offense level of 6, and an 18-level enhancement based on a total loss of more than $3,500,000 but is $9,500,000 or less. The Government's recommendation includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. Thus, the Government recommends a total offense level of 21[6]. The guidelines range for this total offense level is 37-46 months. As noted above, the Court has already sentenced other co-conspirators in this case and has departed from the Guidelines in these cases. In recognition of these sentences and to promote consistency, the Government believes an appropriate sentence in this case is 32 months.

### III. Section 3553(a) Factors

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history

---

[6] It is the Government's position that the offense level for Count 1 would also be 21 based on a base offense level of 8, a 16-level enhancement based on a total loss of more than $1,500,000 but $3,500,000 or less, and a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty.

and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence of 32 months is warranted, appropriate, and reasonable.

  A. *A sentence of 32 months is appropriate based on the nature, circumstances, and seriousness of the offense.*

Here, Amin's conduct involved billing health care benefit programs for prescriptions that were not medically necessary, not prescribed by a medical practitioner, and/or not provided to the beneficiary. In addition, it involved paying kickbacks for the referral of prescriptions. Amin engaged in this conspiracy for an extensive period of time – for almost four years -- and along with his co-conspirators, he defrauded federal, state, and private health care benefit programs of more than $7 million pursuant to all of the schemes involved. While Abdalla was clearly directing the activities of the conspiracy, Amin was a frequent and active participant in elevating his credentials in RX30 to approve these fraudulent prescriptions and performed numerous actions in furtherance of the conspiracy.

Furthermore, along with his co-conspirators, Amin tried to hide the fraudulent conduct from PBMs that were auditing the pharmacy through various tactics such as creating false invoices to fool these PBMs into believing the pharmacy was not engaging in systemic and rampant fraud. Amin even submitted a letter to a PBM under a false name in which he attempted to hide the fact that there was a drug inventory discrepancy at the pharmacy. Accordingly, given the length, scope, and seriousness of Amin's criminal conduct, a sentence of 32 months is warranted in this case.

  B. *A sentence of 32 months is appropriate in light of the defendant's personal history and characteristics.*

A sentence of 32 months is also appropriate in light of Amin's personal history and characteristics. Amin does not have any criminal history pertinent to the conduct here. In addition, unlike others involved in the conspiracy, Amin was not a licensed pharmacist and was clearly heavily influenced by Abdalla. It is also important to note that while Amin did have a small ownership stake in Royal Care and did benefit from submitting false claims to his insurance company to attempt to exhaust his deductible, overall, Amin financially benefitted very little from this scheme. A sentence of 32 months is thus necessary to account properly for his personal history and characteristics.

      C.      *A sentence of 32 months is appropriate to promote respect for the law and afford adequate general deterrence of similar schemes.*

The need for general deterrence also warrants a sentence of 30 months. General deterrence is important in any white-collar case, but is particularly important here because health care fraud crimes like Amin's are difficult to detect. Health insurance benefit programs rely on pharmacists to make truthful representations about services being provided and the reasons they are being provided. These programs do not have the resources to investigate and verify that providers are complying with all applicable laws and rules. The jobs of these health care benefit programs become even harder when individuals, like the co-conspirators here, engage in conduct to hide their conduct such as creating false documentation. Moreover, health care fraud does not just harm the health care benefit programs – it harms the beneficiaries because higher health care costs increase the amounts that these individuals have to pay over time for needed medications and services. While there is no evidence in this case that any patient harm occurred, the financial ramifications of this conduct were pervasive. A term of imprisonment of 32 months is thus necessary to send a message to other potential fraudulent actors that crimes like this one that could result in significant financial harm will be met with an appropriate term of incarceration.

## IV.     Restitution

The parties request that the Court set a hearing within 90 days after sentencing at which time restitution will be resolved.  18 U.S.C. § 3664(d)(5); *see also Dolan v. United States*, 560 U.S. 605, 612 (2010) (noting that where a defendant knows that restitution is mandatory prior to the expiration of the 90-day period, missing the statutory hearing date does not invalidate the hearing).

## V.     Forfeiture

At sentencing, the Government will ask the Court to enter the consent order of forfeiture that will be provided to the Court.

## VI.     Conclusion

For the reasons stated, the United States requests that this Court impose a term of incarceration of 32 months, as well as a period of supervised release of three years.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


By: _____/s/_____
Monika Moore
Carina A. Cuellar
Counsel for the United States
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov