UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 1:20 CR 256 |
| ) | |
| **MOHAMMED TARIQ AMIN,** ) | |
| ) | |
| **Defendant.** ) | |

**SENTENCING POSITION**

COMES NOW, the defendant, by and through counsel, and respectfully requests that the Court impose a sentence of 15 months imprisonment in this case. This sentence avoids unwarranted sentencing disparities, and further accounts for the individual circumstances of Mr. Amin.

I.  PSR Objection:

We join the government in recommending a guideline low end of 37 months in this case, rather than 46 as calculated by probation. The PSR states in paragraph 70 that "[t]he total loss to the federal health care programs, such as Tricare, Medicare, Maryland Medicaid, and Virginia Medicaid, due to the kickback scheme was at least $1,507,875.44." According to §2B1.1 cmt. 3(E)(I), "loss shall be reduced by…. the fair market value of the…..services rendered." Credits should be applied against health care fraud loss under a kickback conspiracy.[1] The burden would

---

[1] *See, e.g. United States v. Medina*, 458 F.3d 1291, 1304 (11th Cir. 2007) (concluding, in health care fraud case involving the payment of kickbacks, that loss under the Guidelines could not include amounts paid services that were medically necessary); *see also United States v. Guerra*, 307 Fed. Appx. 283, 285 (11th Cir. 2009) (unpublished) (affirming district court's re-sentencing on remand in Medina; district court correctly read Medina to mean there was no loss because "there was no evidence that any of the prescriptions per se were not medically necessary"). *United States v. Tariq Mahmood, M.D.*, No. 15-40521 — at *22-23— (5th Cir. April 14, 2016) (Slip Op) (other citations omitted) (vacating defendant's sentence

be on the government to establish the value of medically unnecessary services if it wished to seek application of the federal health care loss enhancement. In this case, the government has recommended that the guideline range be calculated without this enhancement, with a low end of 37 months.

II. 3553(a) Factors

    a. Avoiding Unwarranted Sentencing Disparities

The Court has already sentenced a number of other defendants in this case, including Mohammed Abdalla, Michael Beatty, and Seth Myers. Abdalla had a low-end guideline recommendation of 70 months, and received a sentence of 48 months. Michael Beatty had a low-end recommendation of 30 months and received a sentence of 12 months. Seth Myers had a low-end recommendation of 37 months, and received a sentence of 24 months. As a mathematical matter, Abdalla received a 22 month downward variance, Beatty received an 18 month downward variance, and Seth Myers received a 13 month downward variance. We believe it would be appropriate for the defendant to receive a 22 month downward variance, commensurate with that received by Abdalla.

The sentencing guidelines provide an important but highly imperfect measure of culpability in a case. They focus more on the total loss in a conspiracy than on an individual's role in a conspiracy or how much someone stood to benefit. A better measurement of role and culpability

---

in health care fraud case after defendant was convicted for resequencing the diagnosis codes at various hospitals in order to bill for more expensive treatments that were not provided. The court, in vacating his sentence, reasoned that that "Medicare receives 'value' within the meaning of U.S.S.G. § 2B1.1 comment. (n. 3(E)(i)) when its beneficiaries receive legitimate health care services for which Medicare would pay but for a fraud."). *United States v. Rutgard*, 116 F.3d 1270 (9th Cir. 1997)(a doctor was prosecuted for Medicare fraud based on the performance of services that were not medically necessary. Ninth Circuit reversed the district court's loss finding, holding that "Rutgard must be given credit for the medical services that he rendered that were justified by medical necessity. As always, the burden is on the government to establish what services were not medically necessary. The global estimate of loss made by the district court cannot stand.").

is how much a defendant personally benefitted, reflected in this case by the forfeiture amounts.[2] Of the three above defendants, there was a forfeiture judgment against Abdalla of $2,354,803.90 (who received a sentence of 48 months), a forfeiture judgment against Seth Myers of $428,124.90 (who received a sentence of 24 months), and a forfeiture judgment against Michael Beatty of $0 (who received a sentence of 12 months).  Mr. Amin gained, and stood to gain, far less than the other coconspirators in this case.  His forfeiture judgment of $21,510.92 is much closer to Beatty's judgment, than it is to the $428,124.90 in Myers's judgment.  His sentence should by extension be much closer to Beatty's sentence of 12 months, than Myers's sentence of 24 months.  The government observes in its memo that "Amin did not significantly profit from his involvement in the conspiracy and was not one of the leaders of this massive scheme that spanned a significant period of time and resulted in considerable loss, nor was he a licensed pharmacist at the time of the events in question." ECF Doc. 18 at 2.[3]  A sentence of 15 months appropriately accounts for his relative culpability considering both the guidelines and the amounts each defendant stood to gain through their individual participation in the conspiracy, which is the best proxy for culpability in this case.

---

[2] In an analogous context, it has been noted that a focus on the conspiratorial amounts rather than individual profits may not appropriately measure "the culpability of low-level offenders, who may have contact with significant amounts of drugs, but who do not share in the profits or decision-making," *United States v. Johnson*, 379 F. Supp. 3d 1213, 1220 (M.D. Ala. 2019) (citing Catherine M. Goodwin, *Sentencing Narcotics Cases Where Drug Amount is a Poor Indicator of Relative Culpability*, 4 Fed. Sentencing Rep. 226 (1992)).  The court noted that "courts have increasingly recognized that 'drug quantity is a poor proxy for culpability.'"; *United States v. Woody*, 2010 WL 2884918, at *9 (D. Neb. July 20, 2010) (Bataillon, C.J.) (in conspiracy cases, quantity "is not always a trustworthy measure of the culpability of an individual defendant").

[3] Beatty was also a licensed pharmacist, while Mr. Amin was not.

b. Background and Circumstances of Mr. Amin

1. Mr. Amin is an important contributor to his family and the community

Mr. Amin's wife of 8 years writes that "we rely almost totally on Tariq's salary to make ends meet. He is a kind man with a heart of gold, and having him go away could have very bad consequences on me as I don't know how I will make ends meet." She says of Tariq that he "would give someone the shirt off his back if they asked him for it. I plead with you to please spare my husband." Nisrine Robsinson writes that "the company we work for didn't offer maternity leave . since my husband lost his job during the pandemic my job was our only source of income and being pregnant I had no choice than to take off to deliver my baby. [Tariq] made it a point to be there and show me a significant amount of support both emotionally and financially." George Young writes specifically of an incident in which a homeless man "asked us to buy him some food. I immediately said no, but Tariq, against my advice, and being the person he is, did not hesitate to take the gentleman into the restaurant. I still remember the gentleman ordering fried rice with chicken and Tariq telling him to get something to drink as well. Tariq even gave the individual $20 for his next meal and wished him good luck and hoped things got better for him." Angela Hornsby-Spencer, RpH writes that "[i]f a customer needed medication and they did not have transportation, he would deliver it to them without hesitation." The letters individually and collectively reflect that Tariq is a generous and compassionate man who has lived his life with concern for others.

2. Mr. Amin was a young and impressionable man who responded to the direction of his superior—Mr. Abdalla

As noted in the Statement of Facts "[d]uring the course of the conspiracy below, MOHAMED ABDALLA ("ABDALLA") directed, managed and supervised AMIN." As a condition of his continuing employment, Tariq was expected to commit the varying acts that led

to his sentencing before this Court. But Abdalla did not share conspiratorial profits meaningfully with those who carried out his directives—pocketing over $2.3 million for himself while providing his employee Amin proceeds of $21,000.

Angela Hornsby-Spencer, RpH observes that "[a]t the last Pharmacy we worked together, he was very successful even-though the owner would tell Tariq that he wouldn't be anything special without him and his guidance." She further opined that he followed orders out of a desire "for acceptance by his superior." George Young writes that Tariq was highly anxious in this employment "because his superior, Mohamed Abdalla, had told him that he 'owned' them and that he would never do any better without him. Tariq used to tell me that Abdalla would say things to him like 'You'll never do better without me,' and that 'Anybody can do your job, I can get rid of you today.'"

> 3. Mr. Amin has reestablished his life outside the coercive influence of Mr. Abdalla and has established himself as a lawful, productive citizen

Mr. Amin's current employers write:

> We wanted to reach out to you in support of our employee of almost two and a half years, Mohammed Tariq Amin. Tariq joined our pharmacy in November of 2018 and has been a model employee and individual. He goes above and beyond to make sure patients are taken care of and treats them like they are his own family. Since we have known Tariq, he has always worked with integrity, honesty, and compassion. Never once has he done anything for us to question his character. Never has he approached us with any idea of what he was convicted of, which leads us to believe he was coerced. We were made aware of the charges and kept him on board with us because we know the kind of person he is and the pillar that he has become to the Arlington community during the pandemic. Tariq worked strenuous hours on the front lines of the pandemic provides meals to the homeless and hospital and service to his patients here at Preston's Pharmacy. On countless occasions over the pandemic, Tariq and gowned up and swabbed patients for Covid 19, risking his life for others. This is the Tariq we know.

III. Conclusion

Were it not for the sentence of Michael Beatty who received a sentence of a year, we would assert that a sentence of probation or home confinement is appropriate and avoids unwarranted sentencing disparities. However, in view of that sentence, a term of 15 months avoids unwarranted sentencing disparities, though we believe it is excessive in view of his relative role and beneficial interest in the conspiracy, from which he stood to profit very little, and in which he participated due to the coercive influence of his employer.

Respectfully Submitted,

Dated: 4/12/2021

*/s/ Cary Citronberg*
Cary J. Citronberg
Zwerling Citronberg PLLC
114 N. Alfred Street
Alexandria, VA 22314-3011
(703) 684-8000
(703) 684-9700 (fax)
cary@zwerling.com

## CERTIFICATE OF SERVICE

I certify that on 12th day of April, 2021, a copy of the foregoing was filed electronically. Service of this filing will be made to all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Cary Citronberg*
Cary J. Citronberg
Zwerling Citronberg PLLC
114 N. Alfred Street
Alexandria, VA 22314-3011
(703) 684-8000
(703) 684-9700 (fax)
cary@zwerling.com