IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:20-CR-256 |
| MOHAMMED TARIQ AMIN, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

**RESPONSE TO REPLY**

COMES NOW, the defendant, by and through counsel, and respectfully submits this response to the government's reply. In view of the government's reply,[1] it appears the issue of apportionment may be addressed by the Court, and the Court has the choice under section 3664(h) to select any restitution award between $0 and $7,150,922.12. In this case, the defendant personally profited in an amount of $21,510.92. This is the amount of restitution that should be awarded, and restitution should in any event be no greater than $72,355.76, for the reasons stated below. Pursuant to an internal policy, the government requests joint and several restitution against every defendant in every case, regardless of the individual facts and circumstances. Therefore, here, the government seeks restitution in an amount of $7,150,922.12. This is over <u>330 times</u> more than what Amin personally acquired. It also creates troubling sentencing disparities when compared against Abdalla, the leader of the conspiracy. Abdalla received $2,354,803.90, (more than100 times greater than what Amin received), but was ordered to pay restitution in an amount roughly the same as Amin's, of $7,920,796.78.

---

[1] In view of the confusion surrounding this issue, counsel addresses the history of this confusion at the end of this memorandum. Counsel apologizes for the belatedness of this pleading, but had to consult with other counsel regarding the ethical propriety of responding given counsel's ineffective representation.

I. Argument for Apportionment

The government in its sentencing memo observed that "unlike others involved in the conspiracy, <u>Amin was not a licensed pharmacist and was clearly heavily influenced by [his employer] Abdalla</u>." ECF Doc. 18 at 8. It observed that "overall, <u>Amin financially benefitted very little from this scheme</u>." *Id.* The statement of facts began by noting that "MOHAMED ABDALLA ("ABDALLA") directed, managed, and supervised AMIN." ECF Doc. 8 at 1. The government's sentencing memorandum also noted that Amin "was not one of the leaders of this massive scheme." ECF Doc. 18 at 2 Finally, it noted that "there is no evidence in this case that any patient harm occurred." *Id.* at 8. These facts are uncontested—they are in the government's sentencing memorandum. On these facts, restitution in the amount requested by the government would be disproportionate and inequitable, resulting in an effective life sentence of poverty, the impact of which would be felt upon his children, affecting his family for generations.

The Supreme Court, in a recent 9-0 opinion, reversed a determination by a trial court to impose joint and several liability in the forfeiture context. Until recently, the government also requested joint and several liability in forfeiture cases as well as restitution. In 2017, the Supreme Court unanimously struck down this practice in the forfeiture context. In its analysis, it provided an example of the types of prosecutorial approaches that can be alarming:

> Suppose a farmer masterminds a scheme to grow, harvest, and distribute marijuana on local college campuses. . . In one year, the mastermind earns $3 million. The student, meanwhile, earns $3,600. If joint and several liability applied, the student would face a forfeiture judgment for the entire amount of the conspiracy's proceeds: $3 million. The student would be bound by that judgment even though he never personally acquired any proceeds beyond the $3,600

*Honeycutt v. United States*, 137 S. Ct. 1626, 1631–32, 198 L. Ed. 2d 73 (2017). Other courts applying *Honeycutt* have built off this distinction between the leaders and the lower members of

a conspiracy.  As set forth in *United States v. Gioeli*, No. 08-CR-240 (BMC), 2019 WL 6173421, at *3 (E.D.N.Y. Nov. 20, 2019):

> *Honeycutt* based its rationale on drawing distinctions between a mastermind who controlled the criminal operation and a lowly figure who only had access to and control over a small fraction of the tainted property directly in his possession. *Bangiyev*, 359 F. Supp. 3d at 440. Picking up on this distinction, the Second and D.C. Circuits have declined to apply *Honeycutt* in cases where the defendants were in a position of control in each respective criminal enterprise. *See, e.g., SEC v. Metter*, 706 F. App'x 699 (2d Cir. 2017); *United States v. Leyva*, 916 F.3d 14 (D.C. Cir. 2019).

The Court then addressed restitution, and imposed joint and several liability, but in doing so, focused on the leadership role of the defendant and the larger of the profits directed towards him.  In its decision to award joint and several restitution, the court observed that the defendant was involved in "directly supervising his associates within his crew during the robbery and profiting handsomely from their actions." *Id.* at 7.

And in those cases where the Court apportioned, the defendant was not a leader or organizer.  As the government points out, when apportionment is timely and appropriately raised, courts have ordered it in this Circuit and District. In *United States v. Samuels*, 702 F. App'x 161 (4th Cir. 2017), cited by the government, ECF Doc. 30, p. 5, the defendant did not accept responsibility and went to trial.  However, he was not a leader or organizer of the conspiracy and notwithstanding his refusal to accept responsibility, the Court still elected to apportion the loss "and ordered Defendant to pay to the IRS restitution of $18,070.43 out of the $152,859.43 total loss attributed to the conspiracy." *Id.* at 163. The Court noted that the "Defendant could have been accountable for the entirety of the loss accrued under the conspiracy. *See* 18 U.S.C. § 3664(h)," but that the Court apportioned restitution for "only tax returns with Defendant's name and PTIN." *Id.* at 164.

In another example, Judge O'Grady, in a child pornography case, *United States v. Hicks*, No. CRIM.A. 1:09-CR-150, 2009 WL 4110260, at *5 (E.D. Va. Nov. 24, 2009), apportioned loss. The victim, Vicky, had estimated losses of $146,399.15, and Judge O'Grady apportioned loss in the amount of $3,525 after "look[ing] to § 3664(h) as a basis for apportioning liability in the court's discretion. *See, e.g. Ferenci,* 2009 WL 2579102 (August 19, 2009 E.D.Cal..)" *Id.* at 6. Again in that case, as in most child pornography cases where losses have been apportioned in this district, the defendant was not a leader or organizer.

It is important to observe that the government's opposition does not result from an individualized assessment of the merits of 3664(h) to this case, although it of course points to reasons why apportionment should be denied under the facts of the case, as it does in every case. Rather, as set forth in its memo on page 5, "the government opposes apportionment of restitution among co-defendants responsible for losses in a conspiracy," and in correspondence, wrote that "[a]pportionment is not something the government does or considers." Although Congress passed this statute to give courts discretion to make restitution awards fair and proportionate, the current US Attorney's Office for this district takes the position that courts should never use that discretion in any case, ever—similar to the way the government used to fight forfeiture.

We believe the Court should defer to the wisdom of Congress. Congress passed this law for a reason—to give courts discretion to mete out fair outcomes in conspiracy cases with multiple defendants like this one. It should also defer to the wisdom of the Supreme Court in questioning the appropriateness of joint and several liability in cases with extremely disparate profit amounts, and where the defendant was not a leader or organizer. Here, the lead defendant—Abdalla—took home over $2 million in proceeds, and a low-level defendant who he

"directed," "managed," and "clearly heavily influenced"—Amin—took home $20,000. There are few cases where apportionment could ever be more appropriate than in this case.

A $7 million award against an ordinary worker is not just punishment—it is financial and personal annihilation. Abdalla profited $2,354,803.90 and agreed to pay the entirety of the restitution equal to roughly three times the profits he made—in an amount of $7,920,796.78. There is no legal requirement that additional restitution be required from Amin. Amin's assets are not significant. He has a home which would net $50,000 if he were to sell it, and approximately $30,000 available in liquid assets. He earns a $70,000 salary at his job, which will be lost once he surrenders to prison. His wife is presently unemployed, however, and the total divestiture of these assets would render her homeless and financially destitute, as she relies on this home as a place to live, and requires minimal income to survive. In this case, the defense is not contesting the government's loss amount, the government is not contesting these "economic circumstances of the defendant." 18 U.S.C. Sections 3664(h) & 3664(e). The Court should award restitution no greater than Abdalla's multiplier against Amin, which would result in a restitution amount of $72,355.76. Given the other penalties—namely incarceration and the loss of his present employment—a restitution award equal to forfeiture is appropriate, but in any event should be no greater than the amount Abdalla agreed to pay relative to his profits.

  II.  Explanation of the prior confusion regarding the Court's authority in this case, resulting from counsel's ineffective assistance

Counsel is compelled to separately address the Court to clarify the prior confusion regarding this issue, so that the Court is aware that it results solely from the errors of counsel, and not from anything done by Mr. Amin. Prior to the defendant's plea of guilty, defense counsel misadvised the defendant that he had no legal mechanism to avoid being held jointly and severally liable for all the losses sustained in connection to the conspiracies to which he pleaded

guilty. Thereafter, he signed the plea agreement, which provided in paragraph 8 that "Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses."

Subsequent to the plea, but before sentencing, counsel became aware of the existence of 18 U.S.C. Section 3664(h), which provides the Court with the power to apportion restitution rather than impose joint and several liability. Counsel contacted the government and advised the government that counsel had misadvised the defendant regarding this issue, and asked if apportionment could be argued so that the defense would not be bound by the aforementioned clause in the plea agreement. The government responded that it would permit the defense to argue for apportionment. Defense counsel informed the defendant of his understanding that the government was not going to insist on application of that provision from the plea agreement.

In light of this, counsel was confused on June 18, 2021, when the government filed its memorandum regarding restitution. As expected, it argued that apportionment should be denied based on the facts of the case. However, it also advanced a second, unexpected argument—that apportionment should be denied because the defendant agreed to pay the entirety of the loss in the plea agreement. The government's pleading noted on page 3 that "[a]s expressly stated in his plea agreement with the government . . . 'Defendant agrees to the entry of a Restitution Order for the *full amount of the victims' losses*.'" (emphasis in original). ECF Doc. 30. And then in opposing apportionment on page 5, it wrote that "Defendant agreed in his plea agreement to pay the full amount of loss."

Counsel wrote to the government by email on June 19, 2021, expressing that "I'm concerned there may have been a miscommunication somewhere along the way, as the government in its memo bars me from seeking apportionment." Counsel also wrote that "The government's written request to enforce the plea agreement, which also suggests that my client

may be acting in something less than good faith my asking for apportionment notwithstanding the plea agreement, again forces me into a situation where I will have to withdraw so a new lawyer can call me as a witness and I can discuss my constitutionally inadequate performance on this issue. I am hopeful we can resolve this issue in subsequent pleadings to avoid that outcome." The government wrote back that same day, but refused to withdraw this second argument about the plea agreement, indicating that "the existence of the language in the plea agreement regarding restitution is relevant, insofar as your client has agreed to pay the 'full amount of the victims' losses.'" It suggested that because the defendant signed the plea agreement indicating he would pay the "full amount of the loss," the defendant was limited to arguing that the term "full amount" actually meant a partial amount.

On June 20, 2021, defense counsel then wrote to the government, expressing that counsel did not believe this argument could be made, because "full amount of the victims' losses" was a "clear text." Defense counsel explained that "The government in its motion for restitution cites the provision in the plea agreement where the defendant agreed to pay the full amount of the victims' losses as a grounds to deny the request for apportionment. The plea agreement is a binding contract that cannot now be modified. The Court must follow it. As such, in view of the government's publicly filed position that this provision in the plea agreement remained intact at sentencing, the Court has no discretion to do anything except enter the government's order." Counsel indicated that as such, counsel would "shortly file a response indicating that the court has no discretion to deny your restitution request, and waive hearing of the matter." The government did not express an objection to this rationale or course of action, and replied to this email that same day saying it "understood." After receiving the government's confirmation of defense counsel's position, defense counsel filed its position regarding restitution.

On June 21, 2021, the government seemingly reversed its position, saying in its filing that "it is simply the Government's view that based on the facts and circumstances of this case, the Court should not exercise its discretion to apportion the restitution here." It no longer insists that "Defendant agreed in his plea agreement to pay the full amount of loss" as a grounds to deny apportionment.

III.     Conclusion

For the foregoing reasons, the defense respectfully requests that the Court apportion restitution to the defendant in the amount equal to his profits made in the case, but in no event greater than Abdalla's multiplier, which results in an amount of $72,355.76. After receiving the restitution determination from the Court, the government's order can be revised to distribute the restitution pro rata to the named victims.

Respectfully submitted,

MOHAMMED AMIN
By Counsel

_____/s/_____
Cary Citronberg
ZWERLING/CITRONBERG, P.L.LC.
114 North Alfred Street
Alexandria, VA 22314
703-684-8000 (office)
703-684-9700 (fax)
cary@zwerling.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2021, I filed the foregoing by ECF, which shall serve notice upon all parties.

/s/
Cary Citronberg
ZWERLING/CITRONBERG, P.L.LC.
114 North Alfred Street
Alexandria, VA 22314
703-684-8000 (office)
703-684-9700 (fax)
cary@zwerling.com